*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*SOUTHERN DIVISION*

BACHMAN SUNNY HILL FRUIT FARMS, INC.,

    Petitioner,

vs.                                        Case No. 1:20-cv-1117
                                             Hon. Janet T. Neff

PRODUCERS AGRICULTURE INSURANCE COMPANY,

    Respondent.
_____/

*MOTION TO DISMISS*

*HELD BEFORE THE HONORABLE JANET T. NEFF, U.S. DISTRICT JUDGE*

*Grand Rapids, Michigan, Thursday, July 29, 2021*

APPEARANCES:

For the Petitioner:    JOHN D. TALLMAN
                          John D. Tallman PLC
                          4020 E Beltline Ave NE Ste 101
                          Grand Rapids, MI 49525-9324
                          (616) 361-8850

For the Respondent:    OLIVIA MARCELLA PAGLIA
                          Plunkett Cooney
                          38505 Woodward Ave Ste 100
                          Bloomfield Hills, MI 48304-5096
                          (248) 901-4000

REPORTED BY:           MS. MELINDA DEXTER, CSR-4629, RMR, CRR
                          Federal Official Court Reporter
                          402 Federal Bldg
                          110 Michigan St NW
                          Grand Rapids, MI 49503
                          (517) 604-1732

1           Grand Rapids, Michigan
2           Thursday, July 29, 2021
3           At 11:00 a.m.
4           THE CLERK:  All rise, please.  Court is in session.
5    You may be seated.
6           THE COURT:  Good morning, everybody.
7           MR. TALLMAN:  Morning.
8           THE COURT:  This is the date and time set for a
9    hearing on the Respondent's motion to dismiss the petition in
10   this case.  And it is Case No. 1:20-cv-1117, Bachman Sunny
11   Hill Fruit Farms versus Producers Agriculture Insurance
12   Company.
13          May I please have appearances and introductions.
14          MR. TALLMAN:  John Tallman for the Petitioner.
15          THE COURT:  Thank you.
16          MS. PAGLIA:  Good morning, Your Honor.  Olivia Paglia
17   for Respondent.
18          THE COURT:  Thank you.
19          Okay.  Mr. Tallman, you're up.  You have 15 minutes.
20   Let's hear what you have to say, and please do come to the
21   podium.
22          MR. TALLMAN:  Yes, Your Honor.  Would you --
23   Your Honor, would you like me to respond to the motion to
24   dismiss first, or --
25          THE COURT:  You know, I've not been well this

1    morning.  It's Ms. Paglia who has to get started here.
2             Sorry, Ms. Paglia.
3             MS. PAGLIA:  Good morning.
4             THE COURT:  Good morning.
5             MS. PAGLIA:  This is Producers' motion to dismiss.
6    We are asking the Court to grant our motion.  The issues in
7    this case have been extensively briefed by both sides.  I
8    won't repeat everything in the brief.  I'll go over a few key
9    points and answer any questions that you may have.
10            The Federal Arbitration Act controls this case,
11   Your Honor.  Judicial review is subject to the exclusive
12   jurisdiction under the FAA.  Sorry.  I wanted to make sure you
13   had enough time to write stuff down.
14            Because judicial review is subject to the exclusive
15   jurisdiction under the FAA, judicial review is limited to the
16   FFA and subject to those provisions.  In this case, the
17   petition fails to state a claim under the FAA and should be
18   dismissed for that reason.
19            Furthermore, even if this Court were to find that
20   there was a claim under the FAA, the three-month time
21   limitation under Section 12 of the FAA applies and precludes
22   the petition -- precludes the petition as untimely.
23            Federal case law, including the Sixth Circuit in
24   *Corey*, has said that the failure to meet the statutory
25   conditions of time under Section 12 forfeits the right of

1  judicial review of the arbitration award. So we ask for
2  dismissal with prejudice on those bases.
3          THE COURT: Correct me if I'm wrong, Ms. Paglia, but
4  I really view this case as -- as a fairly simple construct.
5  First of all, that the -- the FAA is the controlling law
6  that's looked to.
7          MS. PAGLIA: Yes. I agree with that, Your Honor.
8          THE COURT: And under the FAA, once an arbitration
9  has taken place and a ruling has been delivered by the
10 arbitrator, as has in this case, there are two specific
11 provisions that apply to two different ways of dealing with an
12 arbitration award under § 12:
13         If a party, either party, wants to vacate or modify
14 or correct the award, in some way attack the award, then they
15 have three months to do that, to file. On the other hand, and
16 for reasons, obviously, I think -- I think the reasons are
17 probably pretty clear, but, on the other hand, if one of the
18 parties seeks to confirm the award, they're happy with the
19 award -- "We got the award. We liked it, but we aren't in any
20 hurry to confirm it" -- they have a year to do that,
21 basically.
22         So that's kind of -- it really seems to me that the
23 case is that simple.
24         MS. PAGLIA: I agree with you, Your Honor.
25         THE COURT: You have -- you have specific statute

1   sections that apply to specific provisions or actions that an
2   arbitration -- a party to an arbitration might take, and there
3   they are.
4           MS. PAGLIA:  Correct.
5           THE COURT:  And in this case, the Petitioner did not
6   comply because it didn't file within 30 -- er, within three
7   months.  Fair enough?
8           MS. PAGLIA:  Fair enough.
9           THE COURT:  Okay.  Thank you.
10          MS. PAGLIA:  Thank you, Your Honor.
11          THE COURT:  Mr. Tallman.
12          MR. TALLMAN:  Yes.  Thank you, Your Honor.  Would
13  you -- Your Honor, would you like me to address my motion to
14  amend also?
15          THE COURT:  Well, I think -- I think it was granted
16  yesterday, wasn't it?
17          MR. TALLMAN:  Leave to file the motion was granted.
18          THE CLERK:  Leave to file the reply was granted.
19          THE COURT:  Yeah.  Oh, I'm sorry.  That's right.  We
20  were dealing with --
21          Well, you can talk about either one.  If you want to
22  talk about leave to -- er, an amended petition, that's fine.
23          MR. TALLMAN:  Okay.  Thank you.  Thank you,
24  Your Honor.  This was an arbitration under the Common Crop
25  Insurance Policy, Your Honor, the CCIP.  Common Crop Insurance

1    Policy is issued under statutes promulgated by USDA generally
2    and FCIC specifically.  The CCIP is a federal regulation that
3    was adopted by the FCIC, the Federal Crop Insurance
4    Corporation, Your Honor.
5         In order for the Respondent here to participate in
6    the crop insurance program, they're required, as a matter of
7    federal law, to agree to the terms of the CCIP, including
8    § 20, including § 20(b)(3), and including § 20(c) of the CCIP.
9         Now, the reason I bring that up is that those
10   sections of the CCIP provide a couple things:
11        § 20 in general in an earlier part of it provides for
12   nullification of the arbitration award if the arbitrator does
13   not follow the rules.  And here the rules prohibit the
14   arbitrator from interpreting the -- well, the CCIP or any of
15   the procedures of the Federal Crop Insurance Corporation,
16   Your Honor.
17        And, here, our argument and the substance of our
18   petition is that this arbitrator did not comply.  He proceeded
19   to interpret the CCIP, and he interpreted it incorrectly.  And
20   specifically what he did was to say that the LAM and the LASH,
21   the Loss Adjustment Manual, and the -- what is the LASH?  I've
22   forgotten.  I forget what the LASH is, but these are two
23   manuals used for adjudicating claims.  He said they were not
24   part of the contract and not part of the insurance policy, and
25   he's wrong.

1  After his decision -- and, you know, let me back up.
2  He was required to go to the FCIC and seek what's called --
3  and seek guidance on this if he had a question about
4  interpretation, and he did not do that.  It's called an FAD, a
5  -- yeah, FAD.  So he did not do that, Your Honor.  He did not
6  seek that -- that -- that guidance from the FCIC.  He did not
7  seek an FAD, and he made the wrong decision.
8  We know that because after the arbitration, we did go
9  to the FCIC.  We did seek an FAD.  We received the FAD.  The
10 FAD said, "Yes, the LAM and the LASH are part of the Common
11 Crop Insurance Policy."  And, I mean, clearly the arbitrator
12 got that wrong.  Clearly he interpreted.  Clearly under the
13 terms of the CCIP, that was an improper interpretation --
14 improper and incorrect interpretation of the Crop Insurance
15 Policy.
16 Now, to go back to 20(b)(3) and 20(c), under those
17 provisions of the Common Crop Insurance Policy, Your Honor,
18 this federal regulation, we've got one year within which to
19 seek nullification or to confirm, and both parties have one
20 year, Your Honor, unlike the FAA.
21 So where does that leave us?  This -- this argument
22 that Respondent is making here in court was presented to FCIC,
23 and FCIC responded, and I quoted some of these comments in the
24 brief, Your Honor.  But in general what FCIC said, in response
25 to the argument made here in court by the Respondent, that

1   this is all controlled by FAA.  You've only got three months
2   to seek nullification under the CCIP but vacation under the --
3   under the FAA.
4       The Federal Crop Insurance Corporation said, "No.
5   That's not correct.  You have a separate claim for
6   nullification under the CCIP.  And we're aware of the FAA.
7   We're aware of it at the time that we adopted --" they're
8   referencing section 506(r) of the Act that provided for this.
9       And they say under -- I'm quoting here from page 10
10  of my brief, which quotes this, Your Honor.
11              ...long-standing legal principle
12              of statutory construction that
13              states that later in time
14              statutes preempt earlier enacted
15              statutes.
16      So that's the FCIC's interpretation of this,
17  Your Honor, and I respectfully submit that the FCIC is
18  correct.
19      Now, to go on to my motion to amend, I am not
20  conceding that we do not have a separate claim for
21  nullification.  I am not conceding that.  I believe we do have
22  a separate claim for nullification for the reasons that I've
23  stated.  And I believe under the terms of the CCIP we've got
24  one year to bring that claim in, and we did.  But in order to
25  make moot this motion to dismiss, I sought to amend.  And I

1  sought to amend under Rule 15 of the federal rules,
2  Your Honor.
3              Under Rule 15, leave is to be freely granted when
4  justice so requires.  Rule 15 provides that in a situation
5  like this, that the claim that I stated under the FAA, which
6  is a claim that the arbitrator exceeded his powers, and you
7  can't get there under the FAA without also incorporating the
8  CCIP because -- you know, the arbitrator exceeded his powers
9  because he did not comply with the CCIP.  He did not follow
10 the rules.  He interpreted the insurance policy himself
11 incorrectly.
12             So under Rule 15, this proposed amendment,
13 Your Honor, relates back to the time of filing.  And under --
14 we tried to find as much federal case law as we could,
15 Your Honor, regarding this issue in response to Defendant's
16 argument.  The Defendant has argued that, "Oh, no, Mr. Tallman
17 is mistaken about this once again because we found a case from
18 Nebraska that says that in a situation like this, the FAA
19 section," and I think it's § 12, "that provides for three
20 months for seeking vacatur under the FAA, that's
21 jurisdictional," the Nebraska court said.
22             Well, there are a whole bunch of -- I can't say a
23 whole bunch.  I cited every federal case that I could find
24 that says that's not true; that it's not jurisdictional.  That
25 limitation's period in the FAA is not jurisdictional.

**1**   And I think perhaps the best argument that it's not
**2**   jurisdictional is that the Supreme Court has repeatedly
**3**   ruled -- United States Supreme Court has repeatedly ruled that
**4**   the FAA itself is not jurisdictional.  It's an anomaly in
**5**   federal statutes.  It does not confer jurisdiction on the
**6**   Court.  You need an independent ground for jurisdiction in
**7**   order to bring a claim under the FAA, Your Honor.
**8**   And so for that reason I think that *Karo* case from
**9**   Nebraska is wrongly decided.  Of course, it's not precedent
**10**  for this Court.  I mean, the Nebraska state court was
**11**  interpreting federal law.
**12**  We've got several federal cases, including from
**13**  Judge Quist here that -- actually, Judge Quist's ruling was on
**14**  point with respect to this, that, yes, the parties can agree
**15**  to amend that FAA three-month limitation's period, and here we
**16**  did.  I mean, the insurance company here, the Respondent, had
**17**  to agree in order to comply with federal law in order to issue
**18**  and offer this insurance policy to my client, Your Honor.
**19**  So, what's the other argument?  Oh.  The other
**20**  argument that they make is that somehow they're saying that
**21**  the CCIP, these two sections of the CCIP, 20(b)(3) and 20(c),
**22**  are somehow consistent with the FAA three-month limitation
**23**  period.  Well, no, they aren't.  I mean, one only has to read
**24**  the CCIP, these two sentences from these two sections of the
**25**  CCIP, to see that one year is provided for nullification or

1     for confirmation of an arbitration award, unlike the FAA that
2     provides only three months for a vacation of an arbitration
3     award.
4             So they're not consistent.  There is no way that they
5     can be somehow, you know, made to be consistent.  They simply
6     are not.  They're in conflict with each other.  And I
7     respectfully suggest that the best way to -- to deal with this
8     issue that's been raised by the Defendant is to recognize
9     that, yes, we do have a separate claim for nullification under
10    the CCIP.  And even if we don't, you know, this amendment
11    should be allowed to bring the claim within the FAA for the
12    reasons I've said, Your Honor.
13            THE COURT:  Anything further?
14            MR. TALLMAN:  No.
15            THE COURT:  Thank you.
16            MR. TALLMAN:  Thank you.
17            THE COURT:  Ms. Paglia, any rebuttal?
18            MS. PAGLIA:  Yes, Your Honor.  Just two quick points.
19    I would reiterate, as in our briefing, we do not believe there
20    is a separate claim for nullification under the CCIP.
21    Everything is subject to the exclusive jurisdiction of the
22    FAA, and we also believe that the Sixth Circuit case, *Corey*,
23    is binding and shows -- and that states that there is -- the
24    statutory precondition of timely service of notice forfeits
25    the right to judicial review.  So we believe that the motion

1   for leave to amend is futile on that basis.
2           THE COURT: Thank you, Ms. Paglia.
3           Well, let's deal with that first. I do believe that
4   the Respondent's argument with regard to the amendment of --
5   the proposed amendment to the petition is well taken. I think
6   that -- it would essentially be futile because it really
7   simply reiterates the argument that has already been made.
8           And to suggest that there is some additional way to
9   undermine an arbitrator's agreement outside of the provisions
10  of the FAA is simply not supported by any persuasive
11  authority. I think that, again, if -- even if the amendment
12  were allowed, the petition would still be susceptible of a
13  successful motion to dismiss for failure to state a claim on
14  account of the three-month period not having been observed
15  under the FAA.
16          Now, getting back to the case itself as it initially
17  presented itself. For background -- and these are facts taken
18  from the petition filed by Bachman -- Bachman is an Ohio
19  corporation, and the Respondent, Producers Agriculture
20  Insurance Company, is an Illinois corporation. And they had a
21  policy of crop insurance for the 2017 growing season.
22          Now, we've heard this acronym CCIP, which stands for
23  the Common Crop Insurance Policy, and that is codified at
24  757.8, and it provides for judicial review pursuant to
25  paragraphs 20(b)(3) and 20(c) of the Act.

In 2017, Bachman suffered damage to its apple crop, which apparently the Respondent recognized and paid at least a portion of, which Bachman obviously determined was inadequate. So Bachman, as it properly should have, initiated arbitration proceedings as it was required to do under paragraph 20 of the CCIP.

The claim was arbitrated in February of 2020. In March of 2020, the arbitrator issued an award denying Bachman's claims in their entirety. After the award was issued, a request for a final agency determination was made to the Federal Crop Insurance Corporation.

Now, under § 12, which we've heard about here this morning, of the FAA, and that's 9 U.S.C. § 12, quote, "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered," unquote.

And that's what I spoke of originally with Ms. Paglia. No motion to do so, to vacate, modify, or correct, or in any way attack the validity of the arbitration award was made within three months, which would have been -- the date for the cutoff there would have been June 20, 2020.

Then in November of 2020, Bachman initiated this case by filing a petition to nullify the arbitration award alleging that the arbitrator violated 7 C.F.R. 457.8 in making his own interpretations of the insurance policy rather than requesting

1  a policy interpretation from the FCIC.
2  In lieu of filing an answer, the Respondent, Pro Ag,
3  filed this motion to dismiss, Bachman has filed an opposition,
4  and Pro Ag filed a reply.  As we've heard again this morning,
5  in June of this year, 2021, Bachman filed a motion for leave
6  to amend, seeking to add a claim to vacate the award under the
7  FAA, and Pro Ag, in due course, filed a response in
8  opposition.  And we are here to determine the outcomes of
9  those two matters:  The motion by Producers to dismiss, and
10 I've already ruled on the motion of Bachman to amend.
11 The threshold question, I think, and one that
12 Mr. Tallman makes a valiant effort to avoid, really, is
13 whether the FAA controls this action.  And the Respondent, Pro
14 Ag, makes its argument quite forcefully, I think, that the
15 petition filed on behalf of Bachman doesn't state a claim
16 under the FAA because the FAA provides the exclusive remedy
17 for judicial review of arbitration awards issued pursuant to
18 the CCIP, and the petition fails to plead a cause of action
19 under the FAA.
20 They also argue that Bachman has misconstrued the
21 holding in *Farmers Mutual Hail Insurance Company of Iowa v.*
22 *Miller*, and that case is at 366 F. Supp. 3d 974, a Western
23 District of Michigan case from 2018, in that the CCIP does not
24 permit a separate cause of action apart from the FAA.
25 In written response, Bachman argued that the cases

1	cited by Pro Ag don't support its argument that § 20 of the
2	CCIP must be negated.  Specifically, Bachman argues that
3	consistent with *Miller*, a motion to nullify under 457.8 in §
4	20(c) constitutes grounds for relief separate and distinct
5	from a motion to vacate under the FAA.
6	          Pro Ag responded to that arguing that the idea that
7	there is a separate and independent cause of action for
8	nullification is simply not accurate.  The *Miller* case merely
9	recognizes that the FCIC alone can nullify an arbitration
10	award if the FCIC determines that the arbitrator improperly
11	made a policy or procedure interpretation emphasizing that the
12	*Miller* case does not provide authority for Bachman to seek
13	nullification from this Court.  And I think that -- I think
14	that's a little bit where Bachman gets off the rails a bit.
15	          As Mr. Tallman has pointed out, and as I have found
16	out in dealing with these cases over the years, not that there
17	have been very many of them, but the procedures and the rules
18	by which these arbitration decisions and these actions under
19	the CCIP can be pursued are very specific and circumscribed.
20	          And what the Respondent points out here and what I
21	think is correct, is that the *Miller* case relied on by the
22	Petitioner, Bachman, simply doesn't provide authority to seek
23	nullification here in the United States District Court.
24	          The Federal Arbitration Act is -- enacted pursuant to
25	authority under the commerce clause provides, quote, "A

1   written provision in a contract evidencing a transaction
2   involving commerce to settle by arbitration a controversy
3   thereafter arising out of such a contract or transaction, or
4   the refusal to perform the whole or any part thereof, or an
5   agreement in writing to submit to arbitration an existing
6   controversy arising out of such contract, transaction, or
7   refusal, shall be valid, irrevocable, and enforceable, save
8   upon such grounds as exist at law or in equity for the
9   revocation of any contract," close quote, 9 U.S.C. § 2.
10              In the Sixth Circuit once an arbitration is conducted
11  under a valid contract -- arbitration contract, which I think
12  everybody agrees is the case here, the FAA provides the
13  exclusive remedy for challenging acts that taint an
14  arbitration award.  See *Decker v. Merrill Lynch*, 205 F.3d 906,
15  at 909, a 2000 Sixth Circuit case which quotes the *Corey* case
16  noted by Ms. Paglia, *Corey v. New York Stock Exchange*, 691
17  F.2d 1205, at 1212, a 1982 Sixth Circuit case.
18              Here, the parties' insurance policy is a written
19  contract that, quote, "evidences a transaction involving
20  commerce," close quote.  Both statutory requirements being
21  met, my holding is that the FAA controls this action.
22              And there are other district courts that have found
23  FCIC insurance contracts subject to the FAA:
24              *Great American Insurance Company v. Moye*, 733 F.
25  Supp. 2d 1298, at 1302, from the Middle District of Florida

1       from 2010.

2               *In re 2000 Sugar Beet Crop Insurance Litigation*, 228

3       F.Supp.2d 992, at 995 from the Middle District of Alabama in

4       2002.

5               And *Nobles v. Rural Community Insurance Services*, 122

6       F.Supp.2d 1290, from the District of Minnesota in 2002 [sic].

7               Then the question becomes whether the petition should

8       be dismissed as untimely and whether the amendment, the

9       proposed amendment, would make a difference in that regard.

10      In its written submissions, the Respondent made, essentially,

11      two arguments that we discussed when Ms. Paglia argued.

12              First, that relying on the *Corey* case, the petition

13      should be dismissed because it was untimely; an untimely

14      motion to vacate, modify, or correct the award as mandated by

15      § 12 of the FAA, and here again I think it's important to note

16      the specificity with which we are dealing with the FAA and its

17      provisions involving timeliness.

18              The second argument that the Respondent makes is that

19      the one-year time limitation in 20(b)(3) just reflects a one-

20      year time limit to seek confirmation of an award provided by

21      the FAA at 9 U.S.C. § 9.  And it's -- I think it's easy to

22      ride over that -- those specific provisions and what they

23      provide in terms of periods of limitation.  20(b)(3) of the

24      Common Crop Insurance Policy is consistent with and doesn't

25      supercede the separate three-month jurisdictional time

1  requirement for motions to vacate, modify, or correct under
2  the FAA.
3        It really seems to me that in drafting this
4  legislation, the drafters were very mindful of what they were
5  doing in setting forth a three-month limitation in which a
6  disgruntled party could attack an award, and, on the other
7  hand, a one-year limitation in which a party that was
8  satisfied with an arbitration award could move to confirm it.
9        Now, Bachman argues and has argued that its proposed
10 claim under the FAA is timely because the parties agreed to a
11 one-year period for seeking judicial review, which then
12 extended the three-month FAA filing period.  And that
13 argument's been made again here not only in Mr. Tallman's
14 written submissions but also in argument.
15       My ruling is that the petition is properly dismissed
16 because Bachman has forfeited their right to judicial review
17 of the award.  And, again, we have to really dot the I's and
18 cross the T's when we rule on this.  § 12 of the FAA requires
19 that the notice of a motion to vacate, modify, or correct,
20 that is attack an award, must be served on the adverse party
21 or his attorney within three months after the award is filed
22 or delivered.  And there is no question that that is what
23 Bachman seeks to do here; to attack the award.
24       The Sixth Circuit has held that, quote, "Failure to
25 comply with the statutory precondition of timely service of

1  notice forfeits the right to judicial review of the award."
2  And that's the *Corey* case, 691 F.2d at 1212.  The argument to
3  the contrary fails because the FAA provides its exclusive
4  remedies for seeking to nullify the arbitration award.
5            The opposition has relied on a case, *International*
6  *Brotherhood of Teamsters General Teamsters Local 406 v.*
7  *FiveCap, Inc.*, which was Judge Quist's case mentioned by
8  Mr. Tallman.  And there Judge Quist did expressly indicate
9  that in *FiveCap* that neither party cited any case addressing
10 whether the three-month time limit in § 12 is jurisdictional
11 or merely a statute of limitations.  He reached his conclusion
12 that the three-month time period could be extended in the
13 absence of any persuasive authority or argument to the
14 contrary.
15           Finally, I do agree with the Respondent, Pro Ag, that
16 the time limitation provided for in 20(b)(3) of the CCIP does
17 not alter the three-month time limitation in 9 U.S.C. § 12 but
18 is consistent with the one-year time limit to seek judicial
19 confirmation of an award under the FAA, and again emphasizing,
20 to seek judicial confirmation.
21           Because both the original and proposed amended
22 petitions are untimely under the FAA, Bachman's amendment
23 would be futile, as I indicated earlier.  Leave to amend is
24 properly denied.
25           And the motion by Pro Ag to dismiss the petition is

```
1    granted.  An order and judgment will issue in due course.
2              Is there anything further, Mr. Tallman?
3              MR. TALLMAN:  No.  Thank you, Your Honor.
4              THE COURT:  Thank you.  Ms. Paglia?
5              MS. PAGLIA:  No.  Thank you, Your Honor.
6              THE COURT:  Thank you, both.  We're adjourned.
7              THE CLERK:  All rise, please.  Court is adjourned.
8                   (At 11:40 a.m., the matter was
9                   concluded.)
10                           * * * * *
11                      REPORTER'S CERTIFICATE
12             I, Melinda I. Dexter, Official Court Reporter for
13   the United States District Court for the Western District of
14   Michigan, appointed pursuant to the provisions of Title 28,
15   United States Code, Section 753, do hereby certify that the
16   foregoing is a full, true, and correct transcript of the
17   proceedings had in the within entitled and numbered cause on
18   the date hereinbefore set forth; and I do further certify
19   that the foregoing transcript has been prepared by me or
20   under my direction.  WITNESS my hand this date,
21   August 3, 2021.
22                    _____
                      Melinda I. Dexter, CSR-4629, RMR, CRR
23                    U.S. District Official Court Reporter
                      402 Federal Bldg
24                    110 Michigan St NW
                      Grand Rapids, MI 49503
25
```